# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| COLOR SPOT HOLDINGS, INC., *et al.*, | : | Bankr. Case No. 18-11272 (LSS) |
| Debtors. | : | |
| WINTERS NURSERY LLC, FOREST GROVE NURSERY LLC, WINTERS FOREST GROVE LLC, BLOOMING FARM, INC., and FALLBROOK NURSERY LLC, | : | Civ. No. 18-1246 (UNA) |
| Appellants, | : | |
| v. | : | |
| COLOR SPOT HOLDINGS, INC., *et al.*, | : | |
| Appellees. | : | |

## MEMORANDUM ORDER

Before the Court is the Emergency Motion (D.I. 3, 4, 12) of the above-captioned Appellants seeking entry of an order granting a limited stay pending appeal of the Bankruptcy Court's order, dated August 10, 2018 (B.D.I. 290)[1] ("Second Supplemental Order"), which, *inter alia*, approved the Debtors' assumption and assignment of certain leases ("Leases") to winning bidder and designated purchaser TreeSap Farms, LLC as part of a sale of substantially all of the Debtors' assets. The Debtors (D.I. 10, 11), TreeSap (D.I. 13), and Wells Fargo Bank (D.I. 15, 16) have each filed briefs in opposition. For the reasons set forth below, the Emergency Motion is denied.

1. **Relevant background.** On May 29, 2018, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 4, 2018, Debtors filed a motion to approve the sale of substantially all of their assets, including the assumption and

---

[1] The docket of the Chapter 11 cases, captioned *In re Color Spot Holdings, Inc.*, No. 18-11272 (LSS) (Bankr. D. Del.) is cited herein as "B.D.I. __."

assignment of certain executory contracts and unexpired leases, and to approve procedures in connection therewith. (B.D.I. 64).

2. On June 25, 2018, the Bankruptcy Court entered an order scheduling a hearing on the approval of the sale and approving bid procedures. (B.D.I. 134). On July 13, 2018, Appellants filed an initial objection (B.D.I. 201) to the assumption and assignment of the Leases. An auction was held on July 19-20, 2018, at which the only two bidders for substantially all of the Debtors' assets were Black Diamond Commercial Finance[2] and Wells Fargo.[3] Debtors ultimately determined that Wells Fargo's final bid was the highest and best. (*See* D.I. 11 at Ex. E, 7/20/18 Hr'g Tr.).

3. On July 25, 2018, the Bankruptcy Court entered an order approving the asset purchase agreement (B.D.I. 243) (the "Sale Order"). On July 27, 2018, the Appellants filed a supplemental objection to the assumption and assignment of the Leases. (B.D.I. 253). On August 1, 2018, the Bankruptcy Court held an evidentiary hearing in connection with the Sale Order. At the conclusion of the hearing, the Bankruptcy Court required TreeSap, Wells Fargo's designee for the Leases, to provide Appellants with additional information with respect to TreeSap's financial wherewithal. (D.I. 4 at Ex. G, 8/1/18 Hr'g Tr. at 141:7-21). TreeSap provided the additional information to Appellants in an unredacted form and on a "professionals eyes only" basis. (D.I. 4 at Ex. H, 8/9/18 Hr'g Tr. at 6:2-8). On August 3, 2018, the Bankruptcy Court entered a supplemental sale order, which approved the assumption and assignment of certain contracts, resolved certain cure amounts, and continued the evidentiary hearing with respect to Appellants' objections. (B.D.I.

---

[2] Black Diamond is the Appellants' controlling affiliate. The Bankruptcy Court made the "inference requested by TreeSap that Black Diamond is a competitor of TreeSap. It may, therefore, have motives to oppose the assumption and assignment of the lease[s] to TreeSap, other than a concern about adequate assurance. In that regard, I observe that ... the landlord did not make any demands that a typical landlord may make, such as a security deposit, a letter of credit, or other accommodation." (8/10/18 Hr'g Tr. at 16:5-12).
[3] Wells Fargo is one of the Debtors' three secured creditors whose liens encumber substantially all of their assets.

2

276; D.I. 16 at Ex. 3). On August 9, 2018, the Bankruptcy Court resumed and concluded the evidentiary hearing, taking the matter under advisement. On August 10, 2018, the Bankruptcy Court issued a ruling from the bench, approving the assumption and assignment of the Leases to TreeSap and overruling Appellants' objections. The Bankruptcy Court's detailed ruling on the record outlined its analysis of the facts and law in support of its decision and cited the detailed evidentiary record. (D.I. 4 at Ex. I, 8/10/18 Hr'g Tr.) That day, the Bankruptcy Court entered the Second Supplemental Order approving the sale (B.D.I. 290). On August 14, 2018, Appellants filed their notice of appeal (D.I. 1), along with an emergency motion for limited stay pending appeal (B.D.I. 302) (the "Bankruptcy Stay Motion"). On August 15, 2018, the Bankruptcy Court held a hearing and denied the Bankruptcy Stay Motion. (D.I. 12, 8/15/18 Hr'g Tr. at 48:2-53:9). Appellants filed the Emergency Motion with respect to its appeal in this Court the same day – August 15, 2018 – seeking a "limited stay pending appeal" in light of the scheduled August 17, 2018 sale closing date. (D.I. 3).

4. The Emergency Motion (D.I. 3) and accompanying Declaration, which attaches transcripts from the evidentiary hearings on this matter (D.I. 4), were filed contemporaneously with a motion for permission to seal (D.I. 5). According to Appellants, the Emergency Motion and transcripts contain certain confidential financial information provided by TreeSap to Appellants under the "professional eyes only" confidentiality designation. In addition, on August 1, 2018, the Bankruptcy Court previously granted a prior motion filed by TreeSap to file an exhibit to the Declaration of Jeffrey Pettit, CFO of TreeSap and its newly formed subsidiary TSH Opco, under seal. (B.D.I. 272). The Court cites to pleadings and transcripts herein to avoid any specific reference to financial information which might be deemed confidential.

5. **Jurisdiction.** Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).

6. **Discussion.** The granting of a motion for stay pending appeal is discretionary with the court. *See In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). Appellant bears the burden of proving that a stay of the Confirmation Order is warranted based on the following criteria: (1) whether the movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted).

7. *Likelihood of success on the merits.* As to the first factor, Appellants have not met their burden of making "a strong showing" that they are likely to succeed on the merits. The Bankruptcy Code provides, in pertinent part, that if there is a default under an executory contract or unexpired lease, a debtor may not assume such contract or lease unless the debtor,

4

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default ... ; (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

8. According to Appellants, the Bankruptcy Court erred in its determination that adequate assurance of future performance was provided. (*See* D.I. 3 at ¶¶ 24-27). Courts determine what constitutes "adequate assurance of future performance on a case-by-case basis." *See, e.g., Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001) (construing phrase "adequate assurance of future performance," which is not defined in the Bankruptcy Code, and observing term "is adopted from § 2-609(1) of the Uniform Commercial Code," "is to be given a practical, pragmatic construction based upon the facts and circumstances of each case," and noting "the required assurance will fall considerably short of an absolute guarantee of performance") (quoting *In re Carlisle Homes, Inc.*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988)).

9. The record reflects that the Bankruptcy Court required financial information to be provided to Appellants, that such information was provided in an unredacted form, and that the Bankruptcy Court conducted a two-day evidentiary hearing. The Bankruptcy Court considered the various forms of adequate protections to be provided to Appellants, as well as TreeSap's financial condition and ability to fulfill its obligations under the Leases, if assigned. (*See* 8/10/18 Hr'g Tr. at 8:23-9:16; 9:24-10:23). The record reflects that the Bankruptcy Court carefully considered and rejected each of Appellants' adequate assurance arguments based on specific findings. (*Id.* at 9:17-16:18). The Bankruptcy Court found that TreeSap has $58 million available on its line of credit, and that the line of credit was expanded for the specific purpose of completing this transaction. (*Id.* at 10:8-11:10). The Bankruptcy Court accepted testimony from Mr. Pettit that TreeSap will be cash-flow positive in 2019, and that TreeSap's balance sheets from 2015 through 2017 reflect that

5

the value of TreeSap's assets significantly exceeded its debt. (*See id.* at 13:2-8). Appellants' arguments that TreeSap was overleveraged and lacked the wherewithal to perform under the Leases were all rejected. (*See id.* at 15:6-13 (rejecting bargain purchase income argument); 8/15/18 Hr'g Tr. at 10:23-13:25 (same); 8/10/18 Hr'g Tr. at 10:24-11:10 (rejecting line of credit argument); *id.* at 11:11-24 (rejecting stress test argument); 8/15/18 Hr'g Tr. at 14:20-15:11, 17:12-22 (rejecting "overall riskiness of horticulture business" argument)). The Bankruptcy Court also found that TreeSap has significant experience in the industry, which was not challenged. (*See id.* at 14:22-15:5).

10. The Bankruptcy Court's factual determinations will be disturbed on appeal only if "clearly erroneous." *In re Myers*, 491 F.3d 120, 124-26, 128-30 (3d Cir. 2007). The Bankruptcy Court's findings are entitled to significant deference under the clear error standard of review. Clear error only exists when, "giving all deference to the opportunity of the trial judge to evaluate the credibility of the witnesses and to weigh the evidence, [the reviewing court is] left with a definite and firm conviction that a mistake has been committed." *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010) (quotation marks and citation omitted).

11. Appellants are unlikely to succeed on their appeal of the Bankruptcy Court's adequate assurance ruling for several reasons. The Bankruptcy Court determined that TreeSap's financial information was "factual evidence not in dispute; rather each party emphasizes different financial facts and has a different take on how [the Bankruptcy Court] should view the information provided." (8/10/18 Hr'g Tr. at 8:20-22; 9:17-23)). Here, the Emergency Motion rehashes the same arguments considered and rejected by the Bankruptcy Court based on the same evidence, and, as Debtors point out, Appellants make no effort to identify any specific errors that exist in the August 10, 2018 ruling. Appellants offer no further analysis, no suggestion that the Bankruptcy Court misapprehended the evidence proffered, and no critique or suggestion that the Bankruptcy

6

Court employed an improper legal standard in evaluating and analyzing the facts. Merely repeating these rejected arguments does not meet the "substantial" burden Appellants have to show a likelihood of success on the merits of their appeal. On the "better than negligible but not greater than 50%" scale that the *Revel* court adopted, Appellants do not make a "better than negligible" showing of any likelihood that the Bankruptcy Court's prior ruling should be disturbed.

12. ***Irreparable harm.*** Appellants have failed to establish that they would suffer irreparable harm in the absence of a stay. To do so, Appellants must establish a resulting injury "that cannot be redressed by a legal or equitable remedy." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

13. Section 363(m) of the Bankruptcy Code provides that a challenge to a sale is mooted if "the underlying sale or lease was not stayed pending the appeal, and []the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease." *Krebs Chrysler-Plymouth v. Valley Motors*, 141 F.3d 490, 499 (3d Cir. 1998). While Appellants reserve their right to argue that validity of the sale would not be affected by reversal – and thus statutory mootness may not even apply – Appellants also rely mainly on the possibility of statutory mootness as irreparable harm justifying a stay. (D.I. 3 at 9-10). However, the possibility that an appeal may become moot does not alone constitute irreparable harm for purposes of obtaining a stay. *See e.g., Regal Ware, Inc. v. Global Home Prods., LLC*, 2006 WL 2381918, at *1 (D. Del. Aug. 17, 2006) ("[T]he fact that [the movant's] appeal could be rendered moot by the closing of the sale does not in and of itself constitute irreparable harm."). Even taken with the other arguments raised, Appellants' burden is not met. Appellants argue that they will be forced into leasing to a third party, in spite of the anti-assignment provisions contained in those Leases, which should be given weight in the balancing of stay factors, along with the fact that Appellants "may find

7

themselves right back before this Court and incur significant legal fees in the event yet another one of its lessees fails to meet its obligations under the Leases." (*See* D.I. 3 at 8, 10).

14. The anti-assignment provisions to which Appellants repeatedly refer are irrelevant by virtue of § 365 of the Bankruptcy Code. The argument that Appellants one day may be faced with another tenant bankruptcy does not satisfy the burden either. "[A] purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" unless "the potential economic loss is so great as to threaten the existence of the movant's business." *See Revel AC*, 802 F.3d at 572. Appellants have not indicated that the assignment of the Leases would threaten the existence of Appellants' business. Appellants concede that they are receiving a cure of all pre-assumption defaults, and assuming TreeSap fails to honor its post-assumption obligations under the Leases, monetary damages and other state court remedies will adequately rectify any potential injury. As the Bankruptcy Court found, the closing of the sale will not strip away any of Appellants' rights under the Leases or to their underlying property rights that might constitute irreparable harm:

> [T]his movant is not losing any asset. It still has its property. It still has its contract. Its contract will be enforceable post-assumption and assignment in total against the new tenant. Monetary damages will be available if the tenant does not pay the rent or any other obligation that it has. State law remedies will be available to it, to the extent that there's a non-monetary obligation that the tenant breaches ... There are clearly legal remedies available to the movant[], in the event that this tenant fails to fulfill any obligation that it has under the contract.

(8/15/18 Hr'g Tr. at 48:22-49:7). With respect to monetary damages and other state court remedies, Appellants simply argue that, based on TreeSap's financial projections, it is unclear whether Appellants' remedies would "actually equate[] to dollars or just fractions or pennies on the dollar ... I think it would certainly be more of the latter." (*See id.* at 19:17-24). Such speculative and purely economic harm as that suggested by Appellants is insufficient to warrant a stay pending appeal.

8

15. **Conclusion.** Having evaluated Appellants' likelihood of success on the merits and risk of irreparable harm absent a stay, and having determined that Appellants have failed to carry their burden as to either element, the Court is satisfied no further analysis is required. *See Revel AC*, 802 F.3d at 571.

NOW, THEREFORE, it is HEREBY ORDERED that the Motion to Seal (D.I. 5) is **GRANTED** and the Emergency Motion (D.I. 3) is **DENIED**.

Entered this 21 day of August, 2018.

_____
United States District Judge